IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

LYLE G. RARDON, Individually and          *
LYLE G. RARDON and CAROLYN
A. RARDON, as husband and wife            *
393 Lone Ridge Lane
Clinton, TN  37716                        *

       Plaintiffs                     *

vs.                                                          CASE NO.:
                                          *

HOLLAND, LP
1000 Holland Drive                        *
Crete, IL  60417
    SERVE ON:                         *
    Timothy J. Curran
    286 Memorial Court                *
    Crystal Lake, IL  60014
                                          *

and
                                          *

JUSTIN L. McFERRIN
5390 Susquehanna Drive                    *
Virginia Beach, VA  23462
                                          *

and
                                          *

WILLIAM DAVIS, SR.
1731 Riverside Drive                      *
Charlotte, NC  28214
                                          *

and
                                          *

PLASSER AMERICAN CORP.
2001 Myers Road                           *
Chesapeake, VA  23324-0464
    SERVE ON:                         *
    Robin R. Laskowski
    2001 Myers Road                   *
    Chesapeake, VA  23324-0464
                                          *

      Defendants
_____   *

## COMPLAINT FOR DAMAGES

COME NOW the Plaintiffs, LYLE G. RARDON, individually and LYLE G. RARDON and CAROLYN A. RARDON as husband and wife, by and through Michael McGowan, Esq., and McGowan & Cecil, LLC, and brings this civil action against Defendants HOLLAND, LP, JUSTIN L. McFERRIN, WILLIAM DAVIS, SR., and PLASSER AMERICAN CORP., and for causes of action state as follows:

### Jurisdiction and Venue

1.      This is an action for personal injury that occurred in the District of Columbia due to the negligence and defective products of the defendants and based upon the laws of the District of Columbia.

2.      There exits complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, the jurisdiction of this Court is invoked under 28 USC 1332.

### Parties

3.      This Complaint concerns injuries to the Plaintiffs that occurred on October 6, 2013 because of the negligence and products liability of the defendants at a work site on a Metro rail line in Washington, D.C. between Union Station and Judiciary Square Station (work site).

4.      Lyle G. Rardon (hereinafter "Rardon" or "Plaintiff") was born on July 22, 1961 and resides at 393 Lone Ridge Lane, Clinton, TN  37716.

5.      Mr. Rardon was married to Plaintiff Carolyn A. Rardon on August 16, 1986 and has remained married to her at all times up to the present.

6.      Defendant Holland, LP (hereinafter "Holland") is an Illinois limited partnership with its principal office located in Crystal Lake, Illinois.  At all relevant times hereto, Holland was doing business, contracted to supply services, and was engaged in a persistent course of

conduct in the District of Columbia, and derived substantial revenue from services used and provided in the District of Columbia.

7.      Defendant Holland designed, manufactured, owned, operated and maintained the welder, that while being used at the work site on October 6, 2013, generated and caused hot flashing slag to travel from their welder to a hydraulic line located on a reel on the back of a prime mover (PMW01) and caused a hole in the hydraulic line allowing hydraulic fluid to leak out onto the hot rail and/or sheer slag below resulting in a fire and Plaintiff's injuries.

8.      That at the time of the aforementioned fire on October 6, 2013, Christopher Lee Hamlin was operating a pettibone/speed swing crane at the work site.  He was in a hold position with his pettibone/speed swing crane attached to an old piece of rail resting on the rail seats. When the fire started, Hamlin attempted to escape the fire, smoke and heat by backing the pettibone/speed swing up.  When Hamlin backed the pettibone/speed swing up, the old piece of rail that the pettibone/speed swing crane was attached to, was raised from its resting position on the rail seats and into the air and it struck and seriously injured Plaintiff, Lyle G. Rardon.

9.      Defendant Justin L. McFerrin was an employee of Defendant Holland working as a Supervisor and Welder on 10/05/2013, 10/06/2013, and at all times mentioned in this Complaint.  At all times mentioned herein and surrounding Plaintiff's injuries on 10/06/2013, Defendant McFerrin was an employee of Defendant Holland and acting within the scope of his employment.  Defendant McFerrin performed and supervised the last weld that was performed at the work site before the fire and Plaintiff's injuries.  During this last weld a hot flashing slag traveled from the welder and created a hole in the hydraulic hose located on the reel on the back of the prime mover (PMW01).

10.     Defendant William Davis, Sr., was an employee of Defendant Holland working as a Senior Welder on 10/05/2013, 10/06/2013.  At all times mentioned herein and surrounding Plaintiff's injuries on 10/06/2013, Defendant Davis was an employee of Defendant Holland and acting within the scope of his employment.

11.     Defendant Plasser American Corp. (hereinafter "Plasser") is a Delaware corporation with its principal place of business in Chesapeake, Virginia.  At all relevant times herein, Plasser was doing business, contracted to supply services, engaged in a persistent course of conduct in the District of Columbia, and derived substantial revenue from services used and provided in the District of Columbia.  Defendant Plasser designed, manufactured and sold the prime mover (PMW01) including the Holland welder and the hydraulic hose that leaked hydraulic fluid onto the hot track and/or sheer slag and caused a fire at the work site on 10/06/2013.

### Facts

12.     In the late afternoon or evening of Saturday, October 5, 2013, and the early morning of Sunday, October 6, 2013, Defendant Holland's employees Harold Ingram, Justin L. McFerrin and William Davis, Sr., were replacing existing rail and welding sections of new rail on the Metro rail line in Washington, D.C. at the job site.  Among other acts, they were operating the Holland welder located on the back of and attached to the prime mover (PMW01).  During their operation of the welder on 10/05/2013 and 10/06/2013, the welder propelled hot flashing slag into the air and onto the hydraulic hose located on a spool on the back of the prime mover (PMW01) which created a hole in the hose allowing hydraulic fluid to leak onto the hot weld and/or sheer slag on the track below resulting in a fire and Plaintiff's injuries.

13.     Defendant Plasser designed, manufactured and sold the prime mover (PMW01), that included as component parts the Holland welder that generated the hot flashing slag and the hydraulic hose that the hot flashing slag traveled to and created a hole in and from which the hydraulic fluid leaked resulting in the subject fire and Plaintiff's injuries on 10/06/2013.

14.     The Holland employees working on this rail repair job at the work site and referenced in this Complaint were at all times mentioned in this Complaint employees of Defendant Holland and acting within the scope of their employment with Defendant Holland.

15.     Plaintiff Lyle Rardon was employed by the Washington Metropolitan Transit Authority (WMATA) on 10/06/2013 and was working on the replacement project at the work site.

16.     The replacement project included three major pieces of equipment:  (1) the prime mover (PMW01), designed, manufactured and sold by Defendant Plasser, which sits on the rails; (2) the flashbutt welder, designed, manufactured, owned and operated by Defendant Holland which was a component part of PMW01 and was suspended by a crane connected to the prime mover (PMW01); and (3) a pettibone/speed swing crane, manufactured by Pettibone, LLC.

17.     Defendant Holland was welding new train rails that were replacing existing rail on the Glenmont-bound tracks of Metro's Red Line at the time and location of the fire and Plaintiff's injuries on 10/06/2013 as well as on the day prior, 10/05/2013.

18.     Defendant Holland was involved in the design, construction, manufacture, delivery, operation and maintenance of the prime mover used for this project (PMW01), and which was involved in the fire causing Plaintiff's injuries.  The prime mover (PMW01) had the Holland welder head and the hydraulic fuel hose involved in the subject fire attached to it as component parts.

19.    The hose for the hydraulic fluid was penetrated by a hot flashing slag from the Holland welder causing hydraulic fluid to leak from the hose onto the hot weld and/or sheer slag on the track below discarded by Defendant Davis within the work area beside the third rail and the weld igniting the hydraulic fluid and causing a fire.  The hydraulic hose was manufactured by Parker Hannifan Corporation, Parflex Division, Model 518C-89.  This hose was located on a spool on the back of the prime mover (PMW01) and was used to provide hydraulic fluid for the operation of machinery, including a profile grinder machine.  The hydraulic hose had been energized at the time of the fire in preparation for using the profile grinder machine.

20.    When an old piece of rail was removed and a new piece of rail was put in its place at the work site, Holland employees, McFerrin and Davis, welded the new piece of rail to the adjoining piece of rail using the Holland welder located on the back of the prime mover (PMW01).

21.    The Holland welding machine electrically generates high temperatures, which melt the ends of the rails and fuses them in place.  During the welding, hot flashing slag is projected into the air and away from the welder.  Unless precautionary measures are taken, including but not limited to, flaps, curtains, asbestos blankets or other barriers, the hot flashing slag will travel substantial distances, contact and burn objects in the area surrounding the welding.

22.    That proper precautionary measures were not taken on 10/05/2013 and 10/6/2013 by the Defendants to prevent the hot flashing slag from traveling outside of and away from the welder and consequently the hot flashing slag from the welder contacted the hydraulic line located on the spool on the back of the prime mover (PMW01) and created a hole in the hose from which hydraulic fluid leaked onto the hot track and/or sheer slag causing a fire.

23.      That after the last weld before the fire had been completed and while the hydraulic hose was being prepared for use with the profiler grinder, hydraulic fluid leaked from the hole created by the hot flashing slag from the welding machine onto the hot weld and/or sheer slag on the track below and/or the improperly disposed of sheer slag.

24.      Defendant Hamlin who was operating the pettibone/speed swing crane in the work site, saw the fire and smoke and attempted to escape by backing his speed swing up.  When Defendant Hamlin backed the speed swing up, old piece of rail that the speed swing was attached to was forced up into the air and it struck and seriously injured Plaintiff.

25.      After each weld of the new rail is completed, hot slag is removed from the track where the weld had been performed.  The hot slag is the excess metal from the weld.  After the hot slag is removed must be safely disposed of so as to avoid injuries to workers and materials in the work site.  Defendant Holland, and their employees, Defendants McFerrin and Davis, were responsible for removing the sheer slag from the track after each weld and making certain that is was safely disposed of.

26.      That after the last weld before the fire, Defendants McFerrin and Davis failed to safely dispose of the hot sheer slag.  They failed to remove it from the work area and failed to place it in a protective metal bucket or other container so as to prevent it from coming into contact with the workers and equipment on the rail project.  Defendant Davis disposed of the hot sheer slag in the work area beside the third rail and the new weld, where he knew and should have known that it could and would come into contact with the workers and equipment on the rail job at the work site.

27.     After the welding and removal of the hot sheer slag a profile grinder, which grinds the welded surfaces flat, is used.  The hydraulic hose on the back of the prime mover is attached to the profile grinder and it provides the hydraulic fluid necessary for it to operate.

28.     In the process of preparing for the profile grinding, including unraveling the hydraulic hose from the reel on the back of the prime mover (PMW01) and attaching it to the profiler the hydraulic hose came into contact with the hot sheer slag improperly disposed of by Defendant Davis, creating a hole in the hydraulic hose.  When the hot sheer slag created a hole in the hydraulic hose, hydraulic fluid escaped onto the hot weld and/or the sheer slag on the track below, which ignited the hydraulic fluid and caused the fire and Plaintiff's injuries.

29.     Defendants were, before the Plaintiff's injuries on October 6, 2013, aware of other similar accidents, and despite this knowledge, Defendants did nothing to improve the safety of their machines or warn users and purchasers of the known dangers.

30.     At all times relevant hereto, Defendants Holland and Plasser acted by and through their officers, directors, workers, contractors, employees, predecessors, successors, principals, subsidiaries, divisions, parent companies, sister companies, licensees, licensors, franchisees, franchisors, sales force, and/or other agents and are therefore liable under the doctrines of successor liability, respondeat superior, vicarious liability and/or agency law.

## Liability

## COUNT I
### Negligence – Holland, LP

31.     Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 30 of this Complaint with the same effect as if herein fully set forth.

32.     Holland owed a duty to the Plaintiffs to use reasonable care, including in the operation and design of the welder and was negligent and failed to use reasonable care for among other acts and omissions:

A.     Failed to properly and adequately train their employees, including Defendants McFerrin and Davis, not to operate the welder in proximity to objects that could be damaged by the hot flashing slag from the welder, including the hydraulic lines located on the reel on the back of the prime mover (PMW01).

B.     Failed to properly and adequately train their employees to use barriers, including flaps and asbestos blankets to prevent flashing slag from leaving the immediate vicinity of the welder and contacting objects in the surrounding area including the hydraulic lines on the back of the prime mover (PMW01).

C.     Failed to properly and adequately train their employees to use asbestos blankets or other protective barriers to protect objects in the surrounding area from being damaged by the hot flashing slag from the Holland welder, including the hydraulic line located on the prime mover.

D.     Failed to properly and adequately supervise their employees, including not permitting them to operate the welder in proximity to objects that could be damaged by the hot flashing slag emanating from their welder, including the hydraulic line located on the back of the prime mover (PMW01).

E.     Failed to provide their employees with flaps, asbestos blankets, curtains or other barriers or protective devices to prevent the hot flashing slag created

by the welder from traveling to and damaging objects in the surrounding

area and causing fire, serious injury or death including the hydraulic line.

F.    Failed to provide a warning to their employees and to the operators of their

welder that the hot flashing slag from their welder becomes airborne and

travels to objects in the surrounding area including the subject hydraulic

line located on the back of the prime mover (PMW01) and can burn or

otherwise damage them.

G.    Failed to have a fire watcher present during the welding to immediately

extinguish the hot flashing slag leaving the welder and contacting objects

in the surrounding area including the hydraulic lines located on the reels

on the back of the prime mover (PMW01).

H.    Failed to warn of the need to have a fire watcher present during the

welding to immediately extinguish the hot flashing slag leaving the welder

and contacting objects in the surrounding area such as the hydraulic hose.

I.    Placed the welder on the prime mover (PMW01) too close to the hydraulic

lines located on reels on the back of the prime mover (PMW01) allowing

the hot flashing slag to reach the hydraulic line and create a hole in it.

33.    Holland failed to ensure that their methods of performing their work did not

involve danger to person or property.

34.    Holland failed to comply with OSHA General Industry Standards, National

Institute of Occupational Safety and Health (NIOSH) guidelines, American Conference of

Governmental Industrial Hygienists (ACGIH) guidelines, American National Standards Institute

(ANSI) guidelines, the WMATA System Safety Program Plan, the WMATA Construction Safety Methods Manual, or the Metrorail Safety Rules and Procedures Handbook.

35.    Defendants Justin L. McFerrin and William Davis, Sr., were employees of Holland at all times mentioned in this Complaint within the scope of employment, including but not limited to 10/05/2013 and 10/06/2013 when they operated the Holland welder and removed and disposed of the sheer slag from the last weld before the subject fire.

36.    Defendant Holland is liable for the negligence of their employees McFerrin and Davis, pursuant to the doctrine of Respondeat Superior.

37.    As a direct and proximate result of Defendant Holland's negligence, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages he is entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant HOLLAND, LP, in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

## COUNT II
### Strict Liability for Defective Design of Product – Holland, LP

38.    Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 37 of this Complaint with the same effect as if herein fully set forth.

39.     At all times mentioned herein Defendant Holland was in the business of designing, manufacturing, maintaining, and selling welders and designed and manufactured the welder that was in use at the work site at the time of the subject fire and Plaintiff's injuries on 10/06/2013.

40.     Defendant Holland designed, manufactured, maintained and owned the welder that was attached to the prime mover (PMW01) and was being operated shortly before the subject fire and the injuries to Plaintiff on 10/06/2013.

41.     That Defendant Holland's welder was defective in design at all times mentioned herein and for among other acts and omissions:

      A.     It allowed hot flashing slag to escape from the welder and into the air and away from the welder to objects in the surrounding area and burn them resulting in a risk of fire and serious bodily injury and death.

      B.     It propelled hot flashing slag uninhibited into the air allowing it to come into contact with objects in proximity to the welder, including the hydraulic line located on the back of the prime mover (PMW01), and causing a fire and serious bodily injury to the Plaintiff.

      C.     It was not equipped with asbestos blankets, flaps, curtains, or other barrier to prevent the hot flashing slag generated in the welding process from escaping the welder, becoming airborne, and traveling to, and damaging and burning holes in objects in the surrounding area including the hydraulic line on the back of the prime mover (PMW01).

D.     It did not contain a warning that it should not be operated in the vicinity of objects that were not fire proof because of the risk of the hot flashing slag from the welder burning them and causing a fire or other injury or damage.

E.     It did not contain a warning that it should not be operated without the use of an asbestos blanket, flap, curtain or other barrier to prevent the hot flashing slag from escaping the immediate vicinity of the welder and contacting objects in the vicinity.

F.     It did not contain a warning to place a fire protective cover over all objects in the vicinity of the welding which could be contacted and damaged by the hot flashing slag.

G.     It did not contain a warning to have a fire watcher present with a fire extinguisher to extinguish immediately any hot flashing slag that escaped the welder during the welding process and made contact with objects in the surrounding area.

H.     Placed the welder on the prime mover (PMW01) too close to the hydraulic lines located on reels on the back of the prime mover (PMW01) allowing the hot flashing slag to reach the hydraulic lines and creating a hole in it.

42.     Due to the aforementioned defects the Holland welder was unreasonably dangerous. It was dangerous to an extent beyond that which would be contemplated by an ordinary buyer who purchased the product.

43.     The distance that the hot sheer slag traveled from the welder, the high temperature that the hot sheer slag maintained during the course of their travel and the risk of damage

creating holes and fire as a result of the flashing slag remaining hot while they travel through the air was not contemplated by an ordinary buyer or operator.

44.    The condition of the Holland welder was not substantially changed from the time of its manufacture by Defendant Holland up until the time of the fire and injuries to Plaintiff on 10/06/2013.

45.    Had Defendant Holland's welder not been defective and hot flashing slag not been permitted to escape the welder and travel away from the immediate area of the welder there would not have been a hole created in the hydraulic line and there would not have been a fire, no need for an emergency exit from the scene by the speed swing operated by Hamlin and Plaintiff would not have been injured.

46.    Plaintiff further alleges that Defendant Holland knew or should have known that the aforementioned defect(s) created an unreasonable risk of harm to the purchaser, users of the welder and others in the vicinity of the operation of the welder, and should have warned of such.

47.    As a direct and approximate result of Defendant's aforesaid acts and/or omissions, Defendant Holland's welder caused a fire and injuries to Plaintiff on 10/06/2013.

48.    As a direct and proximate result of Defendant Holland's product defect, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages he is entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant HOLLAND, LP, in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

## COUNT III
### Strict Liability for Failure to Warn – Holland, LP

49.    Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 48 of this Complaint with the same effect as if herein fully set forth.

50.    Defendant Holland's welder allowed hot flashing slag to escape during welding and into the air uninhibited and to come into contact with and damage objects in the surrounding area including the hydraulic line located on the back of the prime mover (PMW01) causing a fire and serious bodily injury to Plaintiff.

51.    It was foreseeable that the hot flashing slag would escape the welder and come into contact with objects located in the area surrounding the welder including the hydraulic line on the back of the prime mover (PMW01) and that the hot flashing slag would cause damage to these objects resulting in fire and serious bodily injury including to Plaintiff.

52.    The defendant knew of, and should have known of the foreseeable harm and failed to give a warning of the harm including that:

> A.    The welder should not be operated in the vicinity of objects, like the hydraulic lines located on reels on the back of the prime mover (PMW01) that could be damaged by the hot flashing slag generated by the welder.

> B.    That the welder should not be operated without an asbestos blanket, flap, curtain or other barrier to prevent the hot flashing slag from escaping the welder.

C.      That any objects in the surrounding area that are not fire proof must be

protected from the hot flashing slag, including the hydraulic lines on the

back of the prime mover (PMW01).

D.      That the hot flashing slag generated during the welding remains hot

enough to travel through the air, land on objects in the surrounding area

and burn them resulting in leaks, fires and other damage, bodily injury or

death.

E.      That a fire watcher, with a fire extinguisher, should always be present

during welding to watch the hot flashing slag and extinguish it

immediately when it leaves the Holland welder.

53.     That Holland failed to advise of the risks of operating the welder and provide

directions for its safe use.

54.     That had Holland provided a warning on their welder and in the literature

accompanying their welder and to their employees and other users and individuals working in the

vicinity of the welder of the danger of the hot flashing slag traveling outside the welder and

distances beyond the immediate vicinity of the welder and creating holes in hydraulic lines

resulting in serious injury or death, the subject incident and injuries to Plaintiff would have been

avoided.

55.     As a direct and proximate result of Defendant Holland's product defect,

Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head,

spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and

proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will

continue to suffer physical pain and mental anguish in the future.  He has incurred and will

continue to incur in the future expenses for medical care, medical treatment and lost wages. Plaintiff seeks all legal damages he is entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant HOLLAND, LP, in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

## COUNT IV
### Negligence – Justin L. McFerrin

56.     Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 55 of this Complaint with the same effect as if herein fully set forth.

57.     Justin L. McFerrin owed a duty to use reasonable care, including in the operation of the welder and the proper disposal of the sheer slag and he breached this duty and failed to use reasonable care in the operation of the Holland welder on 10/05/2013 and 10/06/2013 and the disposal of the sheer slag and among other acts and omissions:

    A.     Operated the welder too close to the hydraulic lines stored on spools on the rear of the Prime Mover (PMW01) resulting in hot flashing slag burning a hole in the hydraulic line allowing hydraulic fluid to leak and resulting in a fire and serious injuries to Plaintiff.

    B.     Operated the welder too close to the hydraulic lines located on the spool on the back of the prime mover (PMW01) without using an asbestos blanket, flap or other barrier to prevent the hot flashing slag from escaping the welder and the immediate vicinity of the welder and contacting objects in the surrounding area, including the hydraulic lines on the back of the prime mover (PMW01).

C.     Failed to protect the hydraulic lines from the hot flashing slag from the welder by putting an asbestos blanket or other protective barrier over the hydraulic line to prevent the hot flashing slag from contacting them and causing a hole and leak.

D.     Failed to safely dispose of the hot sheer slag after he and/or Defendant Davis removed it from the last weld prior to the subject fire.  He failed to dispose of the sheer slag outside the work area and failed to dispose of it in a metal container or other safe container that would have prevented it from coming into contact with other workers and equipment working on the job site.

58.     That by Defendant McFerrin failing to safely dispose of the sheer slag and by disposing of it unprotected and in the work area it came into contact with the hydraulic line for the profiler causing it to leak hydraulic fluid onto the recent track weld and/or the sheer slag resulting in a fire and Plaintiff's injuries.

59.     As a direct and proximate result of Defendant McFerrin's negligence, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant JUSTIN L. McFERRIN in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

## COUNT V
### Negligence – William Davis, Sr.

60.     Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 59 of this Complaint with the same effect as if herein fully set forth.

61.     William Davis, Sr., owed a duty to use reasonable care, including in the operation of the welder and the proper disposal of the sheer slag and he breached this duty and failed to use reasonable care in the operation of the Holland welder on 10/05/2013 and 10/06/2013, and the proper disposal of the sheer slag and he was negligent and breached this duty for among other acts and omissions he:

    A.    Operated the welder too close to the hydraulic line stored on spools on the rear of the Prime Mover (PMW01) resulting in hot flashing slag burning a hole in the hydraulic line allowing hydraulic fluid to leak and resulting in a fire and serious injuries to Plaintiff.

    B.    Operated the welder too close to the hydraulic lines located on the spool on the back of the prime mover (PMW01) without using an asbestos blanket, flap or other barrier to prevent the hot flashing slag from escaping the welder and the immediate vicinity of the welder and contacting objects in the surrounding area, including the hydraulic lines on the back of the prime mover (PMW01).

C.      Failed to protect the hydraulic lines from the hot flashing slag from the welder by putting an asbestos blanket or other protective barrier over the hydraulic line to prevent the hot flashing slag from contacting them and causing a hole and leak.

D.      Failed to safely dispose of the hot sheer slag after he and/or Defendant McFerrin removed it from the last weld prior to the subject fire.  He failed to dispose of the sheer slag outside the work area and failed to dispose of it in a metal container or other safe container that would have prevented it from coming into contact with other workers or equipment working on the job site.

62.     That by Defendant Davis failing to safely dispose of the sheer slag and by disposing of it unprotected and in the work area it came into contact with the hydraulic line for the profiler causing it to leak hydraulic fluid onto the recent track weld and/or the sheer slag resulting in a fire and Plaintiff's injuries.

63.     As a direct and proximate result of Defendant Davis' negligence, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant WILLIAM DAVIS, SR., in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

**COUNT VI**
**Negligence – Plasser American Corp.**

64.     Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 63 of this Complaint with the same effect as if herein fully set forth.

65.     Defendant Plasser played a lead role in the design and manufacture of the prime mover (PMW01) and its component parts, specifically as to the location and placement of the welder and hydraulic fuel hose, and the type of hose used and, any protection or barriers.

66.     Plasser sold the prime mover that was present and in use at all times mentioned herein, including the fire and Plaintiff's injuries on October 6, 2013.

67.     Plasser owed a duty to Plaintiffs to use reasonable care in the design and manufacture of the prime mover (PMW01) and its component parts, including the Holland welder and the hydraulic lines located on the back of the prime mover (PMW01) and Plasser failed to use reasonable care and breached their duty to Plaintiffs for among other negligent acts and omissions:

A.     Designing, manufacturing and selling the prime mover (PMW01) with the Holland welder and hydraulic lines located on spools on the back of the prime mover (PMW01) too close together so that the hot flashing slag from the welder could reach the hydraulic line and burn a hole in it.

B.     Not providing and not requiring the use of an asbestos blanket, curtain, flap or other barrier to prevent all of the hot flashing slag from escaping

the welder and the immediate vicinity of the welder and burning a hole in the hydraulic line located on the back of the prime mover or other objects in the vicinity.

C.     Designing, manufacturing and selling the prime mover (PMW01) without protecting the hydraulic lines located on the back of the prime mover from the hot flashing slag from the Holland welder.

D.     Not warning the operator of the welder not to operate the welder in the vicinity of objects that could be damaged or burnt by the hot flashing slag, including the hydraulic line on the back of the prime mover.

E.     Not designing and manufacturing the hydraulic lines located on the back of the Plasser prime mover out of a material that would not be damaged by the hot flashing slag from the welder or providing protective sleeves or an encasement to protect the hydraulic lines from the hot flashing slag generated by their welder.

68.     As a direct and proximate result of Defendant Plasser's negligence, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's negligence, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant PLASSER AMERICAN CORP., in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

## COUNT VII
### Strict Liability for Defective Design of Product – Plasser American Corp.

69.     Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 68 of this Complaint with the same effect as if herein fully set forth.

70.     Defendant Plasser manufactured the Prime Mover (PMW01) upon which the hydraulic line and welder were attached and was being used on 10/05/2013 and 10/06/2013 and at the time of the fire and Plaintiff's injuries.

71.     Defendant Plasser sold the Prime Mover (PMW01) upon which the hydraulic line and welder were attached and were being used on 10/05/2013 and 10/06/2013 and at the time of the subject fire and Plaintiff's injuries.

72.     Defendant Plasser designed the Prime Mover upon which the hydraulic lines and welder were attached that were being used on 10/05/2013 and 10/06/2013 and at the time of the fire and Plaintiff's injuries.

73.     Plasser designed the welder and the spool with the hydraulic line located on the prime mover (PMW01) to be too close together, failed to provide protection for the hydraulic line from hot flashing slag from the welder, failed to prevent the hot flashing slag from escaping the welder, and the immediate vicinity of the welder and failed to provide warnings and instruction on how to safely operate the machine.  The prime mover (PMW01) and its component parts, including the Holland welder and the hydraulic hoses located on the back of the prime

mover (PMW01) were defective at all times mentioned herein and including when the prime

mover (PMW01) left Defendant Holland's control and at the time of the subject fire.

      74.     Plasser's design of the prime mover was defective for among other acts and

omissions:

      A.     The Holland welder and the hydraulic lines located on spools on the back of the Plasser prime mover (PMW01) were too close together allowing for the hot flashing slag from the welder to travel to the hydraulic line and create a hole in the hydraulic line allowing hydraulic fluid to leak and cause a fire and Plaintiff's injuries.

      B.     There was no flap, blanket or curtain barrier to prevent all of the hot flashing slag from the welder to escape the welder and the immediate vicinity of the welder and reaching the hydraulic line on the back of the prime mover (PMW01) and create a hole in it.

      C.     The hydraulic line was not placed in a fire proof enclosure to prevent the hot flashing slag from the welding process damaging it.

      D.     The hydraulic line was not made of a material to prevent damage to it from the hot flashing slag generated by the welder.

      E.     That no warnings were placed on the welder, the prime mover or the hydraulic lines that:

          1.     The welder should not be operated without a barrier to ensure that no hot flashing slag escapes from the welder onto objects in the surrounding area.

      2.      That the hydraulic lines are not fire proof and need to be covered or otherwise protected from the hot flashing slag from the welding as they can be damaged by the hot flashing slag resulting in fires and serious injury and death.

      3.      That a fire watcher, with a fire extinguisher, must be present during welding and immediately extinguish any hot flashing slag that escapes the welder.

F.      The welder was attached to a boom on the back of the Prime Mover and could only be extended a short distance from the rear of the Prime Mover where the hydraulic lines were stored on spools.

G.      That the aforementioned design(s) allowed the hot flashing slag from the welder to travel away from the welder in the air to the hydraulic line located on the back of the Prime Mover causing a hole in the hydraulic line and allowing the hydraulic fluid to leak out onto the hot track and/or sheer slag below and resulting in a fire and Plaintiff's injuries.

75.      The Prime Mover (PMW01) was unreasonably dangerous to an extent beyond that which would be contemplated by an ordinary buyer who purchased the product.  The close proximity of the welder to the hydraulic line, the lack of a device to prevent the hot flashing slag from escaping the welder, the lack of protection for the hydraulic line, the absence of hydraulic lines that would not be damaged by the hot flashing slag, the distance the flashing slag travelled maintaining a high temperature, as well as the risk of fire and serious bodily injury and death, was not contemplated by an ordinary buyer.

76.      Due to the aforementioned defects the Prime Mover was unreasonably dangerous.

77.     As a direct and proximate result of Defendant Holland's product defect, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's product defect, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will continue to incur in the future expenses for medical care, medical treatment and lost wages.  Plaintiff seeks all legal damages he is entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant PLASSER AMERICAN CORP., in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

**COUNT VIII**
**Strict Liability for Failure to Warn – Plasser American Corp.**

78.     Plaintiff RARDON adopts by reference the allegations contained in paragraphs 1 through 77 of this Complaint with the same effect as if herein fully set forth.

79.     Defendant Plasser failed to warn and place warnings on the welder, PMW01 and the hydraulic lines, including:

> A.     The welder attached to the back of the prime mover (PMW01) should not be operated in proximity to objects like the hydraulic lines on the back of the prime mover (PMW01) that could be damaged by the hot flashing slag from the welder.

> B.     That the hot flashing slag from the welding process could travel to and damage the hydraulic lines located on the back of the prime mover,

including causing holes in them resulting in a fire and serious bodily injury.

C.  That the hot flashing slag will travel substantial distances in the air and retain sufficient heat to damage materials in the vicinity, including the hydraulic hoses located on the back of the prime mover (PMW01).

D.  That the welder should not be operated without the use of a flap, asbestos blanket or other barrier to prevent all of the hot flashing slag from escaping the welder.

E.  That the hydraulic hoses are not fire proof and are made of a material that will be damaged by contact with the hot flashing slag and that a fire and serious bodily injury could result.

F.  That objects that could be damaged from the hot flashing slag like the hydraulic lines must be covered with an asbestos blanket or other protective device while the welder is being used.

G.  That a fire watcher, with a fire extinguisher, must be present during welding and immediately extinguish any hot flashing slag that escapes the welder.

80.  As a direct and proximate result of Defendant Holland's product defect, Plaintiff sustained serious injuries to his body and limbs, including but not limited to his head, spine, shoulders, back, and right knee as well as emotional distress.  As a further direct and proximate result of Defendant's product defect, Plaintiff has suffered permanent injuries and will continue to suffer physical pain and mental anguish in the future.  He has incurred and will

continue to incur in the future expenses for medical care, medical treatment and lost wages. Plaintiff seeks all legal damages he is entitled to under the law.

WHEREFORE, Plaintiff LYLE G. RARDON demands a money judgment against Defendant PLASSER AMERICAN CORP., in an amount of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages, plus interest and costs.

**COUNT IX**
**Loss of Consortium – All Defendants**

81.     Plaintiffs Lyle G. Rardon and Carolyn A. Rardon incorporate by reference paragraphs 1 through 80 above and further allege that she is the wife of Plaintiff Lyle G. Rardon and that they were married on 08/16/1986 and have remained married to the present.

82.     Plaintiff Carolyn A. Rardon further alleges that as direct and proximate result of the negligent, and harmful acts of the Defendants as previously described, she has spent considerable time caring for and assisting her husband from the time of the incident to the present.

83.     As a direct and proximate result of this incident, Plaintiff Carolyn A. Rardon has sustained loss of society, affection, companionship and relations.

WHEREFORE, Plaintiffs, LYLE G. RARDON and CAROLYN A. RARDON demand judgment in compensatory damages against Defendants, jointly and severally, in the full and just amount of ONE MILLION DOLLARS ($1,000,000.00), plus interest and costs.

Respectfully submitted,

Michael McGowan, Esq.
D.C. Bar No. 386101
McGOWAN & CECIL, LLC
319 Main Street, Third Floor
Laurel, Maryland 20707
(301) 483-9960
*Attorney for Plaintiffs Rardon*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

LYLE G. RARDON, Individually and   *
LYLE G. RARDON and CAROLYN
A. RARDON, as husband and wife   *
393 Lone Ridge Lane
Clinton, TN  37716   *

      Plaintiffs   *
vs.                         CASE NO.:
  *
HOLLAND, LP
1000 Holland Drive   *
Crete, IL  60417
     SERVE ON:   *
     Timothy J. Curran
     286 Memorial Court   *
     Crystal Lake, IL  60014
  *
and
  *
JUSTIN L. McFERRIN
5390 Susquehanna Drive   *
Virginia Beach, VA  23462
  *
and
  *
WILLIAM DAVIS, SR.
1731 Riverside Drive   *
Charlotte, NC  28214
  *
and
  *
PLASSER AMERICAN CORP.
2001 Myers Road   *
Chesapeake, VA  23324-0464
     SERVE ON:   *
     Robin R. Laskowski
     2001 Myers Road   *
     Chesapeake, VA  23324-0464
  *
      Defendants
  *

## **PRAYER FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury.

Michael McGowan, Esq.
D.C. Bar No. 386101
McGOWAN & CECIL, LLC
319 Main Street, Third Floor
Laurel, Maryland 20707
(301) 483-9960
*Attorney for Plaintiffs Rardon*